1
2
3
4
5                    **UNITED STATES DISTRICT COURT**

6                    **EASTERN DISTRICT OF CALIFORNIA**

7

8   **MELISSA HENSON and KEITH**              **CASE NO. 1:13-CV-01452-AWI-JLT**
    **TURNER, on Behalf of Themselves and All**
9   **Others Similarly Situated,**            **ORDER GRANTING DEFENDANT'S**
                                              **MOTION TO CHANGE VENUE AND**
10                  **Plaintiffs**            **TRANFERRING VENUE TO THE**
                                              **CENTRAL DISTRICT OF CALIFORNIA**
11          **v.**
                                              **(Document #6)**
12  **FIDELITY NATIONAL FINANCIAL,**
    **INC.,**
13
                    **Defendant**
14

15

16

17              **I.      INTRODUCTION**

18  MELISSA HENSON and KEITH TURNER (collectively, "Plaintiffs") bring this class action

19  against FIDELITY NATIONAL FINANCIAL, INC. ("Defendant") alleging violations of Sections

20  8(a) and 8(b) of the Real Estate Settlement Procedures Act ("RESPA").  Defendant has filed a

21  motion pursuant to Federal Rule of Civil Procedure 12(b)(3) challenging venue.  Defendant

22  requests that the Court dismiss this action pursuant to 28 U.S.C. Section 1406(a).  Alternatively,

23  Defendant requests that the Court transfer this action to the Central District of California ("CDC")

24  pursuant to either 28 U.S.C. Section 1406(a) or 1404(a).  Alternatively, Defendant contends this

25  action should be dismissed pursuant to the 12(b)(6) motion.  For the reasons set forth below,

26  Defendant's 12(b)(3) motion will be GRANTED and the case will be transferred to the CDC.  The

27  12(b)(6) motion will be DENIED without prejudice.

28

## II.      BACKGROUND

The complaint alleges that Plaintiffs and the purported class members each utilized the services of at least one of several named title and/or escrow companies in connection with the purchase and/or refinancing of their homes. Compl. at ¶¶6-7.  The complaint alleges that Defendant is the parent corporation of the title and/or escrow companies that provided settlement services to Plaintiffs. Compl. at ¶¶6-7.  The title and/or escrow companies include Fidelity National Title Company, Chicago Title Company, Ticor Title Company, Security Union Title Company, Alamo Title Company, Lawyers Title Company, and Commonwealth Land Title Company. Compl. at ¶7.  The complaint alleges that "in connection with the handling of the processing and closing of [the] real estate settlement[s] and escrows performed by [the] subsidiar[ies] of the Defendant," Plaintiffs were required to pay fees for overnight delivery services by delivery companies chosen by the title and escrow companies. Compl. at ¶6.  The delivery companies that the complaint alleges were used include UPS, Federal Express, and OnTrac. Compl. at ¶6.  Plaintiffs allege that Defendant directed its subsidiaries to utilize those selected delivery companies for delivery services related to Plaintiffs' real estate settlements and escrows and that Plaintiffs were charged for those services. Compl. at ¶¶6-7.  The complaint alleges that throughout this time Defendant had in effect "master agreements" with each delivery company regarding the real estate transaction delivery services. Compl. at ¶14.

The complaint alleges that Plaintiff Henson purchased a home located in Bakersfield, CA; the date of closing was February 15, 2012. Compl. at ¶22.  Chicago Title Company handled the escrow for Plaintiff Henson's purchase and loan transaction. Compl. at ¶23.  Plaintiff Henson was charged an "Overnight Delivery Fee" of $13.71 by UPS. Compl. at ¶23.  Plaintiff Henson paid the charge when escrow closed on February 15, 2012. Compl. at ¶23.

The complaint alleges that Plaintiff Turner refinanced his home located in Los Angeles, CA; the date of closing was September 11, 2012. Compl. at ¶24.  Lawyers Title Company handled the escrow for Plaintiff Turner's refinancing. Compl. at ¶24.  Plaintiff Turner was charged a total of $19.98 for "overnight delivery services" by both Federal Express and OnTrac. Compl. at ¶24.  Plaintiff Turner paid the charges when escrow closed on September 11, 2012. Compl. at ¶24.

1    Plaintiffs allege violations of RESPA's prohibition against kickbacks and splitting

2    unearned fees. <u>Compl</u>. at ¶¶13-21, 25; <u>see also</u> 12 U.S.C. §2607.  The complaint alleges that

3    Defendant was provided a portion of the delivery charges paid by Plaintiffs pursuant to a master

4    agreement with the delivery company as a referral fee or kickback in violation of RESPA Section

5    8(a) or provided to Defendant as a fee for services not actually rendered by Defendant in violation

6    of RESPA Section 8(b). <u>Compl</u>. at ¶¶14, 18-21, 40-41.

7

8                              **III.    LEGAL STANDARD**

9    Federal Rule of Civil Procedure 12(b)(3) allows a defendant to move for dismissal of the case on

10   the basis of improper venue. <u>See</u> Fed. R. Civ. P. 12(b)(3); <u>Abrams Shell v. Shell Oil Co.</u>, 165

11   F.Supp.2d 1096,1102 (C.D. Cal. 2001).  The plaintiff bears the burden of showing that venue is

12   proper in the chosen district. <u>Koresko v. Realnetworks, Inc.</u>, 291 F.Supp.2d 1157, 1160 (E.D. Cal.

13   2003); <u>American Homecare Fed'n v. Paragon Sci. Corp.</u>, 27 F.Supp.2d 109, 112 (D. Conn. 1998);

14   <u>see also</u> <u>Piedmont Label Co. v. Sun Garden Packing Co.</u>, 598 F.2d 491, 496 (9th Cir. 1979)

15   (holding that plaintiff bears the burden to show proper venue in context of summary judgment).

16         When there are multiple parties and/or multiple claims in an action, the plaintiff must

17   establish that venue is proper as to each defendant and as to each claim. <u>Pacer Global Logistics,</u>

18   <u>Inc. v. AMTRAK</u>, 272 F.Supp.2d 784, 788 (E.D. Wis. 2003); <u>Bearse v. Main St. Invs.</u>, 170

19   F.Supp.2d 107, 116 (D. Mass. 2001); <u>Payne v. Marketing Showcase, Inc.</u>, 602 F.Supp. 656, 658

20   (N.D. Ill. 1985).   Unlike a motion for dismissal under Rule 12(b)(6), the court may consider

21   supplemental written materials and consider facts outside of the pleadings in deciding a Rule

22   12(b)(3) motion to dismiss without transforming the motion into a motion for summary judgment.

23   <u>See</u> <u>Agueta v. Banco Mexicano, S.A.</u>, 87 F.3d 320, 324 (9th Cir. 1996); <u>Travelers Cas. And Sur.</u>

24   <u>Co. of Am. v. Telstar Constr. Co.</u>, 252 F.Supp.2d 917, 922 (D. Ariz. 2003).  Furthermore, the

25   court need not accept the plaintiff's pleadings as true, but the court must draw all reasonable

26   inferences and resolve all factual conflicts in favor of the non-moving party.  <u>See</u> <u>American Home</u>

27   <u>Assurance Co. v. TGL Container Lines, Ltd.</u>, 347 F.Supp.2d 749, 755 (N.D. Cal. 2004).

28         If venue is improper, the district court has the discretion to dismiss the case under Rule

12(b)(3) or transfer the case in the interests of justice to an appropriate jurisdiction under 28 U.S.C. Section 1406(a).  See King v. Russell, 963 F.2d 1301, 1304 (9th Cir. 1992); Kawamoto v. CB Richard Ellis, Inc., 225 F.Supp.2d 1209, 1212 (D. Haw. 2002).  However, even where venue is proper, the district court may still transfer the case to another jurisdiction where it may have been brought for the convenience of the parties and witnesses and in the interests of justice under 28 U.S.C. Section 1404(a).  See Kawamoto, 225 F.Supp.2d at 1212.

## IV.    DISCUSSION

Defendant challenges Plaintiffs' choice of the Eastern District of California ("EDC") as a proper venue for this case.  "Except as otherwise provided by law," the venue statute found at 28 U.S.C. Section 1391 governs venue for civil actions in federal district courts. 28 U.S.C. §1391(a).  RESPA contains its own venue and statute of limitations provision, which states:

> Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation.

12 U.S.C. §2614.  Venue for a RESPA claim is therefore proper in two possible districts: (1) The district where the property is located, and (2) The district where the RESPA violation allegedly occurred.  Venue must be proper for all named plaintiffs in a class action. See Abrams Shell, 165 F.Supp.2d at 1107 n. 5.  Proper venue for the RESPA claims cannot be determined solely by relying on the subject properties' location because Plaintiff Henson's property is located in Bakersfield—which is in the EDC—and Plaintiff Turner's property is located in Los Angeles—which is in the CDC.  It is clear that venue is proper in this Court for Plaintiff Henson's claims because her property is located within this District and Division.  The same cannot be said for Plaintiff Turner.  The Court must determine where the alleged RESPA violation(s) occurred in order to determine whether this District and Division is a proper venue for Plaintiff Turner's claims.

1    Plaintiffs argue that this District is the proper venue for both Plaintiffs regardless of their

2    respective properties' location because the RESPA violation on which their claims rely occurred

3    in the EDC.  Plaintiffs argue that the EDC "is the *only* district where jurisdiction and venue exists

4    over <u>both</u> of the [P]laintiffs' claims." Pl. Opp. to MTCV, at p. 4 (italics added, underline in

5    original).  The complaint alleges violations of 12 U.S.C. Sections 2607(a) and (b). <u>Compl.</u> at ¶¶13-

6    21, 25.  Section 2607(a) provides that "[n]o person shall give and no person shall accept any fee,

7    kickback, or thing of value pursuant to any agreement or understanding . . . that business incident

8    to or a part of a real estate settlement service . . . shall be referred to any person." 12 U.S.C.

9    §2607(a).  Section 2607(b) provides that "[n]o person shall give and no person shall accept any

10   portion, split, or percentage of any charge made or received for the rendering of a real estate

11   settlement service . . . other than for services actually performed." 12 U.S.C. §2607(b).  According

12   to Plaintiffs, the RESPA violation that forms the basis of this complaint and establishes venue in

13   this District is the referral to Defendant's subsidiaries that ultimately led to the unlawful payments

14   made to Defendant. Pl. Opp. to MTCV, at p. 2, 4.

15

16   **A.  The Referral is Not a RESPA Violation**

17   Defendant allegedly circulated a number of "Rate Compliance Memoranda" ("RC Memoranda")

18   from its compliance department.  The memoranda allegedly directed Defendant's subsidiaries to

19   utilize the delivery services of UPS, Federal Express, and OnTrac. <u>Compl.</u> at ¶17.  Gia Lonza,

20   Senior Vice President and Director of Rate Compliance and AG Centralization at Fidelity National

21   Title Group, Inc., prepared the memoranda. <u>Compl.</u>, Ex. B, Lonza Decl. at ¶1.  Ms. Lonza's

22   declaration identifies herself as the author of the RC Memoranda "which are continually updated,

23   revised, and when necessary replaced." <u>Compl.</u>, Ex. B, Lonza Decl. at ¶2.  A total of six RC

24   Memoranda and RC Memoranda Amendments are identified in Ms. Lonza's declaration with

25   dates ranging from December 1, 2005, to February 18, 2010. <u>Compl.</u>, Ex. B, Lonza Decl. at ¶¶4-9.

26   The RC Memoranda were apparently issued by Ms. Lonza from Rancho Cordova, California,

27   which is located in Sacramento County in the Sacramento Division of the EDC.  Plaintiffs argue

28   that the issuance of the RC Memoranda is a "referral" and it is this referral that constitutes a

1    RESPA violation.[1]  Pl. Opp. to MTCV, at p. 4-7.  According to Plaintiffs, the referral was made

2    within the EDC, which makes EDC the district "where the violation is alleged to have occurred."

3    12 U.S.C. §2614.  The Court respectfully finds that Plaintiffs are incorrect.

4         Simply making a referral is not a RESPA violation.  Section 2607 does not prohibit

5    referrals for real estate settlement services altogether.  See 12 U.S.C. §2607.  Rather, Section

6    2607(a) makes it unlawful for a person to "*accept* any fee, kickback, or thing of value" in

7    connection with a referral agreement. 12 U.S.C. §2607(a) (emphasis added).  It is the *acceptance*

8    of a fee, kickback, or thing of value that is prohibited, not the making of a referral itself.

9         The Supreme Court addressed a similar issue of statutory construction in determining the

10   scope of Section 2607(b) in Freeman v. Quicken Loans, Inc., 132 S.Ct. 2034 (2012).  Section

11   2607(b) prohibits the acceptance of "any portion, split, or percentage" of a real estate settlement

12   service fee unless services were actually rendered. 12 U.S.C. §2607(b).  The question before the

13   Supreme Court in Freeman was whether Section 2607(b) prohibited a single settlement service

14   provider from collecting unearned fees—including overcharges for services—or whether the

15   statute required the fee to be shared with one or more other persons who did nothing to earn the

16   shared fee. Freeman, 132 S.Ct. at 2039.  The Supreme Court held that "[Section] 2607(b)

17   unambiguously covers only a settlement-service provider's splitting of a fee with one or more

18   other persons." Freeman, 132 S.Ct. at 2040.

19        In reaching this conclusion, the Supreme Court examined the language of Section 2607(b)

20   and identified two separate transactions that are necessary for Section 2607(b)'s operation.  "First,

21   a 'charge' is 'made' to or 'received' from a consumer by a settlement-service provider.  That

22   provider then 'give[s],' and another person 'accept[s],' a 'portion, split, or percentage' of the

23   charge." Freeman, 132 S.Ct. at 2040.  By not engaging in the second transaction, i.e., not splitting

24   the unearned fee, a settlement service provider may keep the entirely of an unearned fee without

25   violating RESPA. See Freeman, 132 S.Ct. at 2044 ("In order to establish a violation of [Section]

26   2607(b), a plaintiff must demonstrate that a charge for settlement services was divided between

27

28
---

[1] Defendant argues that the issuance of the RC Memoranda is not a referral and further notes that Ms. Lonza is not an employee of Defendant, maintaining that she is employed by Fidelity National Title Group, Inc., one of Defendant's subsidiaries.  It is not necessary to address these issues at this time.

two or more persons"); <u>see also</u> <u>Boulware v. Crossland Mortg. Corp.</u>, 291 F.3d 261, 265 (4th Cir. 2002).  Simply charging a fee and keeping it does not violate RESPA, even when no services are provided in connection with that charge.

Because it is not a violation of Section 2607(b) for a person to charge a fee without actually performing any services (so long as that fee is not split with another), it appears that simply making a referral is not a violation of Section 2607(a) unless a "fee, kickback, or thing of value" is "give[n]" or "accept[ed]" for the referral "pursuant to any agreement or understanding." 12 U.S.C. §2607(a); <u>see</u> <u>Freeman</u>, 132 S.Ct. at 2044; <u>see also</u> <u>Boulware</u>, 291 F.3d at 265 n. 3 ("the presence of an overcharge alone, without any portion of the overcharge being kicked back to or split with a third party, is not sufficient to fall within the purview of [Section 2607(b)]."). In contrasting the coverage of subsections (a) and (b), the Supreme Court has noted that Section 2607(a)'s prohibition "applies to the transfer of any 'thing of value'" and "requires an 'agreement or understanding' to refer business." <u>Freeman</u>, 132 S.Ct. at 2043.  More is required for a violation of Section 2607(a) than a referral by itself; there must be a transfer of something of value, i.e., a kickback. <u>See</u> <u>Freeman</u>, 132 S.Ct. at 2043 ("Subsection (a) prohibits certain *kickbacks* (those agreed to in exchange for referrals).") (emphasis added).  A Section 2607(a) violation is the acceptance of a kickback in exchange for a referral, not the referral standing alone.

This interpretation is bolstered by the fact that both subsections (a) and (b) begin with the same phrase: "[n]o person shall give and no person shall accept any . . . ." 12 U.S.C. §2607.  It is the "giv[ing]" or "accept[ing]" a portion of an unearned fee that is necessary to find a violation of Section 2607(b). <u>Freeman</u>, 132 S.Ct. at 2040.  Likewise, it is the "giv[ing]" or "accept[ing]" a kickback that is necessary to find a violation of Section 2607(a).  Both subsections require a defendant to "give" or "accept" something in order to find a RESPA violation.  Plaintiffs seem to acknowledge this requirement in their complaint by framing the RESPA violations as follows:

> 40. [Defendant]'s *acceptance of payments* incident to or a part of real estate settlement services involving federally related mortgage loans pursuant to the "master" agreements between [Defendant's] chosen overnight delivery companies and [Defendant] *constitutes an unlawful kickback or referral fee* in violation of Section 8(a) of RESPA (12 U.S.C. §2607(a)).

7

41. [Defendant]'s *acceptance* from chosen overnight delivery companies *of payments* of a portion, split, or percentage of settlement service charges incident to or a part of real estate settlement services involving federally related mortgage loans *constitutes an unlawful sharing* in violation of Section 8(b) of RESPA (12 U.S.C. §2607(b)).

Compl. at ¶¶40-41 (emphasis added).  Plaintiffs' complaint recognizes that it is the acceptance of a kickback, referral fee, or share of an unearned settlement charge that is unlawful, not the referral.  Making a referral is a necessary requirement for violating Section 2607(a), and it may be necessary to set into motion the events that eventually lead to a defendant accepting a kickback, referral fee, or portion of an unearned fee under both subsections (a) and (b).  However, the referral cannot be a RESPA violation in and of itself.

Further, accepting Plaintiffs' argument that the circulation of the RC Memoranda was a violation of RESPA would create a statute of limitations bar for both Plaintiffs' claims.  "The statute of limitations for private plaintiffs suing under RESPA is one year from the 'date of the occurrence of the violation.'" Edwards v. First American Corp., 517 F.Supp.2d 1199, 1204 (C.D. Cal. 2007) (quoting 12 U.S.C. §2614).  The most recent RC Memorandum identified in the Lonza declaration was RC Memorandum 2008-0001, Amendment, issued on February 18, 2010. Compl., Ex. B, Lonza Decl. at ¶9.  Nothing before the Court points to a more recent RC Memorandum, Amendment, or other referral alleged to be a RESPA violation.  Section 2614's statute of limitations provision would therefore bar Plaintiffs' claims as of February 18, 2011, well before this complaint was filed.  A determination that the issuance of the RC Memoranda was the requisite RESPA violation would also mean that the statute of limitations had run on both Plaintiffs' claims before escrow closed on either property.

Under Section 2614, the venue and statute of limitations for RESPA claims are both grounded on the occurrence of a single RESPA violation. See 12 U.S.C. §2614.  Courts have understood "the date of the occurrence of the violation" to be the time of closing for purposes of the statute of limitations. See Snow v. First American Title Ins. Co., 332 F.3d 356, 359 (5th Cir. 2003); Carter v. Bank of America, N.A., 888 F.Supp.2d 1, 25 (D. D.C. 2012); Heflebower v. U.S. Bank Nat. Ass'n, 2013 WL 3864214 at *15 (E.D. Cal. 2013); Hale v. World Sav. Bank, 2012 WL

4675561 at *3 (E.D. Cal. 2012). But see Snow, 332 F.3d at 359 n. 3 ("We recognize, however, the possibility that purchasers could pay for a settlement service subject to [Section] 2607(a)-(b) at a time other than the closing, in which case 'the date of the occurrence of the violation' presumably would be the date of payment, not the unrelated closing.").[2]   The Fifth Circuit noted in Snow that

> Congress directed RESPA toward the closing.  The primary ill that [Section] 2607 is designed to remedy is the potential for "unnecessarily high settlement charges" caused by kickbacks, fee-splitting, and other practices that suppress price competition for settlement services. *This ill occurs, if at all, when the plaintiff pays for the service, typically at the closing*.

Snow, 332 F.3d at 359-60 (quoting 12 U.S.C. §2601(a)) (emphasis added).  Identifying the closing as the date when the violation occurs also simplifies the application of Section 2614 and avoids results Congress did not intend, such as a "floating statute of limitations." Snow, 332 F.3d at 359-61.

Here, such a floating statute of limitations would occur if the RC Memoranda referrals were considered the RESPA violations because a new one-year statute of limitations would commence every time a memorandum was issued.  As applied in this action, six separate statutes of limitation would have commenced and run before either of Plaintiffs' homes were purchased or refinanced.  The Court find such a result was not intended by Congress.

In enacting RESPA, Congress sought to remedy the "unnecessarily high settlement charges" that plagued consumers by outlawing kickbacks, referral fees, and fee splitting. See Snow, 332 F.3d at 359-60.  The settlement charges were typically paid at closing. Snow, 332 F.3d at 359-60.  Plaintiffs acknowledge in the complaint that the delivery service charges were paid

---

[2] Here, Defendant must "accept" the payment of a kickback, referral fee, or portion of an unearned fee for there to be a violation of Section 2607.  It is possible for the actual acceptance of the payment to occur at a time other than at closing, but this will not change the timing of the violation in this case.  First, Plaintiffs allege that the unlawful kickbacks are based on an overcharge for the delivery services. Compl. at ¶25.   The overcharges are therefore the source of the unlawful kickback, referral fee, or portion of an unearned fee, and payment of the overcharge was made at the time of closing by each Plaintiff. Compl. at ¶¶23-24.  Second, the RESPA violations as alleged by Plaintiffs' cause of action are the unlawful payments made to Defendant in accordance with the master agreements that were in place with each of the delivery companies. Compl. at ¶25.  Upon Plaintiffs' payments of their respective settlement service fees (at the time of closing), the unlawful kickback, referral fee, or portion of an unearned fee would be paid to Defendant by operation of the agreements.  Defendant would be entitled to the payments per its agreements with the delivery companies at that time. Cf. Snow, 332 F.3d at 360 (noting that it is immaterial when an unlawful "credit" is actually paid to defendant's agents, "the limitations period begins to run when the agents earned the allegedly prohibited credit at the closing.").  Similarly, the complaint's allegations and other evidence show Defendant likely "earned" its kickbacks when Plaintiffs paid for the delivery service charges at the time of closing.

9

1   when the escrow transactions closed. <u>Compl</u>. at ¶¶23-24.  Thus, the harm suffered by Plaintiffs did

2   not occur until the fees were paid for settlement services, which happened at closing.

3     A contrary determination—that the violation occurred prior to closing and prior to the

4   payment of any settlement charges by Plaintiffs—would be inconsistent with <u>Freeman</u>'s Section

5   2607(b) analysis that identifies two necessary transactions, the first being a charge made to the

6   consumer. <u>Freeman</u>, 132 S.Ct. at 2040.  A violation cannot occur before the initial consumer

7   transaction because the settlement service provider whom received the fees from the consumer

8   must then "give" a kickback, referral fee, or portion of an unearned fee to be "accept[ed]" by

9   another. <u>See</u> <u>Freeman</u>, 132 S.Ct. at 2040.

10     Section 2614 speaks of "a single triggering violation, not multiple violations." <u>Snow</u>, 332

11   F.3d at 359.  While <u>Snow</u> discusses only Section 2614's statute of limitation provision, the venue

12   provision also contains a reference to a single "violation." 12 U.S.C. §2614.  As such, the same

13   violation must be the triggering event for both venue and the one-year limitations period.  Section

14   2614 intends the place and time for a RESPA claim to be brought as working in tandem and being

15   based on the same RESPA violation.  Therefore, the RESPA violation must have occurred at the

16   time of closing.

17     The referral is the only RESPA violation Plaintiffs identify to support their contention that

18   venue is proper in the EDC.  That contention is misplaced.  A violation of Section 2607 requires

19   more than a simple referral.  It requires Defendant to have accepted a kickback, referral fee, or

20   portion of an unearned settlement fee and it will occur at the time of closing.  The referral

21   originating in the EDC is therefore not the RESPA violation that can establish this District as the

22   proper venue for both Plaintiffs' claims.[3]

23

24   **B.  Any Alleged RESPA Violation Occurred in the CDC**

25   Plaintiffs contend the referral is the only alleged RESPA violation that occurred in the EDC.

26   Plaintiffs argue no alternative violations could establish this or any other district as the proper

27

28   [3] The Court further notes that if the issuance of the RC Memoranda was the necessary RESPA violation to establish venue in this District, then this action properly belongs in the Sacramento Division of the EDC.

venue for their claims.  Defendant correctly argues that a violation occurs when Defendant accepts a kickback, referral fee, or portion of an unearned fee. MTCV Reply, at p. 2-3.  This is also how Plaintiffs frame the alleged violation in the complaint. Compl. at ¶¶40-41.  The location of the RESPA violations alleged by Plaintiffs therefore depends on where Defendant was located when the unlawful kickbacks, fees, or portions of unearned fees were accepted. See 12 U.S.C. §2614 ("*where* the violation is alleged to have occurred") (emphasis added); see 12 U.S.C. §2607 ("no person shall *accept*") (emphasis added).

Defendant is a Delaware corporation with its headquarters in Jacksonville, Florida. MTCV, Ex. 4, Gravelle Decl. at ¶¶4-5.  Defendant's only California office is located in Santa Ana, which is in the CDC. MTCV, Ex. 4, Gravelle Decl. at ¶6.  Defendant contends that the CDC is the only California district where Defendant has a presence that allows it to accept a kickback, referral fee, or portion of an unearned fee. MTCV Reply, at p. 3.  Plaintiff has offered nothing to suggest otherwise.  Assuming that Defendant did accept an unlawful kickback, referral fee, or portion of an unearned fee in California (and nothing has been suggested by either party that an acceptance occurred outside of California), Defendant was located in the CDC when it did so.  The location of the alleged RESPA violations occurred in the CDC because it is the only district where Defendant was present to accept the unlawful kickback, referral fee, or portion of an unearned fee.

Thus, the CDC is a proper venue for both Plaintiffs' RESPA claims.

**C. Plaintiff Turner's Claim Must be Transferred to the CDC Pursuant to 28 U.S.C. §1406(a)**

Venue in the EDC is not proper as to Plaintiff Turner's RESPA claims.  Defendant moves the Court to dismiss the case, or, in the alternative, to transfer the case to the CDC.  Plaintiffs oppose the motion but do not support a transfer of the case to the CDC or to any other district as an alternative to dismissal.  The CDC is the only proper venue for Plaintiff Turner's claims based on the location of his property in Los Angeles and the location of the alleged RESPA violations.

As to Plaintiff Turner, the Court has discretion to either dismiss his claim for improper venue or to transfer it to the CDC where venue would be proper. See King, 963 F.2d at 1304; Kawamoto, 225 F.Supp.2d at 1212.  "Transfer is usually more in the interest of justice than

11

1    dismissal is." <u>Kawamoto</u>, 225 F.Supp.2d at 1214.  Transfer of venue will avoid the unnecessary

2    delay and expense of refiling this action in the CDC.  The Court finds that transferring Plaintiff

3    Turner's RESPA claims is in the interest of justice.  Defendant's motion to transfer venue to the

4    CDC pursuant to 28 U.S.C. Section 1406(a) is GRANTED as to Plaintiff Turner's claims.

5            Plaintiff Turner's RESPA claims will therefore be TRANSFERRED to the CDC.

**D.  Plaintiff Henson's Claim will be Transferred to the CDC Pursuant to 28 U.S.C. §1404(a)**

7    Venue in the EDC is proper as to Plaintiff Henson's RESPA claims because her Bakersfield

8    property is located within this District.  Nonetheless, Defendant requests the Court transfer the

9    case to the CDC.  Plaintiffs oppose the motion.  As discussed above, the CDC is a proper venue

10   for Plaintiff Henson's claims based on the location of the alleged RESPA violations.

11           "For the convenience of parties and witnesses, in the interest of justice, a district court may

12   transfer any civil action to any other district or division where it might have been brought." 28

13   U.S.C. §1404(a).  The purpose of Section 1404(a) is "to prevent the waste of time, energy, and

14   money and to protect litigants, witnesses and the public against unnecessary inconvenience and

15   expense." <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 616 (1964); <u>Kawamoto</u>, 225 F.Supp.2d at 1213.

16   "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for

17   transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"

18   <u>Stewart Organization, Inc. v. RICOH Corp.</u>, 487 U.S. 22, 29 (1988) (quoting <u>Van Dusen</u>, 376 U.S.

19   at 622).

20           In order to transfer a case under Section 1404(a), the "defendant must make a strong

21   showing of inconvenience to warrant upsetting the plaintiff's choice of forum." <u>See</u> <u>Decker Coal</u>

22   <u>Co. v. Commonwealth Edison Co.</u>, 805 F.2d 834, 843 (9th Cir. 1986).  The district court must

23   weigh numerous factors when deciding whether to transfer a case under Section 1404(a):

25           A motion to transfer venue under [Section] 1404(a) requires the court to weigh
             multiple factors in its determination whether transfer is appropriate in a particular
26           case.  For example, the court may consider: (1) the location where the relevant
             agreements were negotiated and executed, (2) the state that is most familiar with
27           the governing law, (3) the plaintiff's choice of forum, (4) the respective parties'
             contacts with the forum, (5) the contacts relating to the plaintiff's cause of action
28           in the chosen forum, (6) the differences in the costs of litigation in the two

forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. Additionally, the presence of a forum selection clause is a "significant factor" in the court's [Section] 1404(a) analysis . . . [and] the relevant public policy of the forum state, if any, is at least as significant a factor in the [Section] 1404(a) balancing.

Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000); Warfield v. Gardner, 346 F.Supp.2d 1033, 1043 (D. Ariz. 2004); McDaniel v. GEICO General Ins. Co., 2013 WL 1790167 at *3-4 (E.D. Cal. 2013).  The Court should also consider the parties' and witnesses' convenience, the feasibility of consolidating other claims, local interest in the controversy, and court congestion of the two forums. McDaniel, 2013 WL 1790167 at *4; see Metz v. United States Life Ins. Co., 674 F.Supp.2d 1141, 1145–46 (C.D. Cal. 2009); see Williams v. Bowman, 157 F.Supp.2d 1103, 1106 (N.D. Cal. 2001).

Several of the factors identified above are ultimately irrelevant to the subject of transfer in the present case.  For instance, "the state that is most familiar with the governing law" and "the relevant public policy of the forum state" are unhelpful factors because both the EDC and the CDC are forums within the State of California, and as such, there is no discernable difference between the forums when these factors are considered.  Additionally, there would be no problem between the EDC and CDC concerning the "compulsory process to compel attendance of unwilling non-party witnesses."  Also, there is no forum selection clause involved in this case.

Other factors result in a neutral application of the transfer issue.  The parties argue about the cost of litigation in the EDC versus the CDC.  Defendant claims that it is more costly for parties, counsel, and witnesses to travel to Fresno as opposed to Los Angeles. MTCV, at p. 12-13. Plaintiffs claim that the higher price of hotels in Los Angeles compared to Fresno causes this factor to favor a Fresno venue. Pl. Opp. to MTCV, at p. 15-16.  Defendant contends that there would be less need for hotel accommodations in the CDC because Plaintiffs' counsel are in Los Angeles. MTCV Reply, at p. 7-8.  Both parties' contentions appear to have some merit, but it is not apparent to the Court that the difference in the cost of litigation in the EDC versus the CDC is so significant as to weigh on either side of the transfer question.  This factor is neutral.

For similar reasons, the "convenience of the parties and witnesses" factor is also neutral on

the issue of transfer.  Travel would appear to be required for the parties and witnesses regardless of whether the case is litigated in the EDC or the CDC.  Plaintiff Henson must travel from Bakersfield to either Fresno or Los Angeles.  It appears representatives of Defendant will be travelling from Jacksonville.  Neither party has identified any witnesses that are located in the Fresno area.  Ms. Lonza, the only identified non-party witness located in the EDC, would still be required to travel to Fresno.  It is possible that representatives of the delivery companies may be needed as witnesses.  The headquarters of the three delivery companies are all located outside California and necessary witnesses would likely be travelling from those locations.  If anything, it seems that the current forum in Fresno is equally *inconvenient* for all parties and witnesses involved in this lawsuit.  However, it is not clear that the CDC would cause less or more travel expenses than the EDC.  This factor is therefore neutral.

Another neutral factor is "the ease of access to sources of proof."  Defendant acknowledges that "[s]ome evidence may be [located] in the CDC." MTCV, at p. 14.  Although not specifically argued, it is apparent that some evidence related to the referral(s), such as the RC Memoranda, may be located at Ms. Lonza's Rancho Cordova office in the Sacramento Division of the EDC.  Plaintiffs argue that this factor is largely irrelevant due to "electronic discovery and communications." Pl. Opp. to MTCV, at p. 16-17 (citing cases).  It appears that this factor will ultimately yield a neutral outcome, whether due to the existence of sources of proof in both the EDC and CDC or due to the ease of accessing digital records regardless of where they are actually located.

The local interests in the controversy also yield a neutral result.  As Plaintiffs note, "[t]he wrongful scheme alleged in the complaint occurred nationwide and violated federal law." Pl. Opp. to MTCV, at p. 17.  Therefore, the EDC and the CDC have an equal interest in the controversy, as does every other district in the nation where the same scheme is alleged to have occurred and injured purported class members.

The factors identified above do not require transfer to the CDC.  However, the remaining factors strongly favor transfer.

1    **1.  The Location Where the Relevant Agreements were Negotiated and Executed**

2    The majority of the master agreements that allegedly provided for the illegal kickbacks, referral

3    fees, or portion of the unearned fees to be paid to Defendant were negotiated and executed outside

4    the EDC. MTCV, at p. 11; MTCV Reply, at p. 7.  Plaintiffs allege in the complaint that Steve

5    Mizes executed the agreements with UPS, Federal Express, and OnTrac that are at issue. <u>Compl</u>.

6    at ¶15.  Mr. Mizes' declaration states that he has worked as President of ECPurchasing.com ("EC

7    Purchasing"), a subsidiary of Defendant, since December 2000. MTCV, Ex. 5 at ¶2.  EC

8    Purchasing's only office has been located in Jacksonville since September, 2003, and prior to that

9    it was located in Santa Barbara, California. MTCV, Ex. 5 at ¶¶7-8.  Mr. Mizes negotiated

10   agreements with the delivery companies while located in Santa Barbara. <u>See</u> MTCV, Ex. 5 at ¶¶5-

11   6, 8.  There is nothing that suggests any of the master agreements were negotiated and executed in

12   the EDC.  The negotiation and execution of these agreements in the CDC therefore supports

13   transfer.

14

15   **2.  The Respective Parties' Contacts with the Forum**

16   Plaintiff Henson's property is located in Bakersfield which is in the EDC.  The real estate

17   transaction concerning Plaintiff Henson occurred in this District.  Plaintiff Henson is, however, the

18   only party with a presence in this District.  Defendant is headquartered in Florida with a California

19   office located in Santa Ana in the CDC.  Plaintiffs argue that Defendant's non-party subsidiaries

20   located in the EDC favors keeping this case in the EDC. Pl. Opp. to MTCV, at p. 14-15.

21        The relevant inquiry, however, is whether the *parties* have sufficient contacts with the

22   forum.  The contacts of any non-parties are immaterial for this factor, even when the non-party is a

23   party's subsidiary.  "It is well-established that a parent-subsidiary relationship alone is insufficient

24   to attribute the contacts of the subsidiary to the parent for jurisdictional purposes." <u>Harris Rutsky</u>

25   <u>& Co. Ins. Servs., Inc. v. Bell & Clements Ltd.</u>, 328 F.3d 1122, 1134 (9th Cir. 2003) (citing <u>Doe v.</u>

26   <u>Unocal Corp.</u>, 248 F.3d 915, 925 (9th Cir. 2001).  The Court finds that same should be true in

27   matters of venue where a party's contacts with the forum are relevant.

28        A subsidiary's contacts may be attributed to the parent only when the parent and subsidiary

1    are not truly separate entities. See Harris Rutsky, 328 F.3d at 1134 ("Two exceptions to that

2    general rule exist, however—a subsidiary's contacts may be imputed to the parent where the

3    subsidiary is the parent's alter ego, or where the subsidiary acts as the general agent of the

4    parent."); see also Doe, 248 F.3d at 926.  Plaintiffs have not alleged or argued that Defendant and

5    its subsidiaries are alter egos, that the subsidiaries are Defendant's agents, or Defendant and its

6    subsidiaries are not truly separate entities.  Plaintiffs have only alleged that Defendant is the

7    "controlling parent" of its escrow subsidiaries and that Defendant directed the subsidiaries to use

8    the overnight delivery companies' services. Compl. at ¶¶13, 17.  Sufficient facts have not been

9    alleged in the complaint or argued in the briefs to permit the Court to make a finding that

10   Defendant and its subsidiaries are anything but separate entities.  The Court will therefore not

11   consider Defendant's subsidiaries' contacts with the EDC in its analysis.[4]

12         Here, Defendant's contacts in California, irrespective of the contacts of any non-party

13   subsidiaries, are entirely located within the CDC. See Part IV.B., supra.  Defendant has no offices,

14   employees, or any other contacts in the EDC.  This factor therefore favors transfer to the CDC.

15

16   **3.  The Contacts Relating to the Plaintiff's Cause of Action in the Chosen Forum**

17   Similar to the discussion immediately above, Defendant's only contacts to the EDC relating

18   directly to Plaintiff Henson's real estate transaction are through its subsidiary, Chicago Title

19   Company ("Chicago Title").  However, Chicago Title's EDC contacts exist only because Plaintiff

20   Henson chose to purchase property located in the EDC.  It is reasonable to assume that Chicago

21   Title would have been willing to provide similar settlement services for Plaintiff Henson whether

22   her property was located in the EDC, CDC, or in any other district where it has a branch location.

23   The existence of Chicago Title's contacts to the EDC relating to Plaintiff Henson's claims appears

24   to be due to Plaintiff Henson's choice of a title company.

25   _____

26   [4] Assuming that the location of Defendant's subsidiaries affects this venue factor, the Court cannot fathom that
     Defendant does not also have subsidiaries located within the CDC.  This assumption is at least implicit in the
     allegation that the escrow for Plaintiff Turner's refinancing of his Los Angeles home was handled by Lawyers Title, a
27   subsidiary of Defendant. See Compl. at ¶¶7, 24.  Further, as alleged in the complaint, the proposed class consists of
     "[a]ll persons *nationwide* who . . . paid [Defendant's] escrow *subsidiary* for a delivery service." Compl. at ¶¶6-7, 30
28   (emphasis added).  This suggests that Defendant also has subsidiaries located in districts throughout the country where
     the purported class members are alleged to have executed their real estate transactions.

Fidelity National Title Group, Inc., which allegedly issued the RC Memoranda, is the only other entity identified in the complaint or briefs that appears to have any contacts with the EDC related to Plaintiff Henson's claims. Fidelity National Title Group, Inc. is not a party to this lawsuit; it is Defendant's subsidiary. Defendant itself was not directly involved in Plaintiff Henson's real estate transaction or in any activity occurring in the EDC. Plaintiffs have not suggested any conduct by Defendant itself that occurred in the EDC. The alleged involvement by Defendant's subsidiaries is not enough to cause this factor to favor venue in the EDC. See Part IV.D.2., supra.

Assuming that the contacts of Defendant's subsidiaries relating to Plaintiff Henson's claims are influential on this factor, EC Purchasing's contacts must be considered. The master agreements appear to be at the foundation of Plaintiffs' claims of RESPA violations. As discussed above regarding the negotiation and execution of the relevant agreements, EC Purchasing was located in Santa Barbara until 2003. All relevant happenings regarding the negotiation of the master agreements would have occurred in Santa Barbara in the CDC. Plaintiff has offered no evidence to suggest otherwise.

Focusing solely on Defendant itself, the alleged RESPA violations occurred in the CDC because that is the only California district where Defendant could be present to accept a kickback, referral fee, or a portion of an unearned fee. These contacts are directly related to Plaintiff Henson's claims and they occurred in the CDC. Defendant has no contacts with the EDC related to Plaintiff Henson's claims. This factor therefore favors transfer to the CDC.

**4.   Judicial Economy**

Two factors—"court congestion of the two forums" and "feasibility of consolidation of other claims"—could be described as judicial economy. The interest of justice is served by the efficient use of judicial resources. This goal is furthered by transferring cases to districts that are less impacted by large case loads, as well as consolidating similar cases to avoid multiple proceedings. Additionally, judicial economy and the interest of justice is served by utilizing the knowledge and experience of judges that have heard similar cases and are familiar with the issues presented in a

1   given case.  All of these considerations support transfer to the CDC.

2          The EDC is one of the most congested districts in the country. <u>McDaniel</u>, 2013 WL

3   1790167, *6 (E.D. Cal. 2013) (Ishii, J.); <u>Heflebower</u>, 2013 WL 3864214, *1 (E.D. Cal. 2013)

4   (O'Neill, J.) ("Judges in the Eastern District of California carry the heaviest caseload in the

5   nation."); <u>Fernandez v. Obesity Research Institute, LLC</u>, 2013 WL 4587005, *7 (E.D. Cal. 2013)

6   (England, C.J.).  This factor weighs in favor of transfer.

7          In addition, judicial economy is promoted by transferring Plaintiff Henson's claims to the

8   CDC in order to consolidate her claims with Plaintiff Turner's claims.  Plaintiff Turner's claims

9   must be transferred to the CDC.  Transfer of Plaintiff Henson's claims to the CDC would prevent

10  this lawsuit from being split and tried separately in different districts.  Judicial resources are

11  preserved by having one judge decide this case, rather than two.  It also lessens the likelihood of

12  different rulings, disparate outcomes, and the possibility of appeals and re-litigation.

13         Transfer of Plaintiff Henson's claims is also supported by the fact that the CDC has

14  already dealt with a similar RESPA class action complaint in <u>Bergman v. FNF</u>, 2012 WL 4364327

15  (C.D. Cal. 2012).  Defendant argues that judicial economy is promoted by transfer because the

16  <u>Bergman</u> court is already familiar with the issues and CDC Local Rule 83-1.3 would require the

17  same judge to hear this matter upon transfer. MTCV, at p. 10-11.  The <u>Bergman</u> lawsuit was filed

18  by the same counsel representing Plaintiffs here, and Defendant describes the case as "identical."

19  MTCV, at p. 10.  Plaintiffs do not dispute the similarity of the two cases, but instead argues that

20  the <u>Bergman</u> court disposed of the case without significant progression into the case and without

21  addressing the merits of the case. Pl. Opp. to MTCV, at p. 18-19.  Plaintiffs argue that this Court is

22  just as familiar with the issues presented as the <u>Bergman</u> court. Pl. Opp. to MTCV, at p. 19.  While

23  this Court is now familiar with this action's issues, Plaintiff Turner's claims will likely be

24  transferred to the <u>Bergman</u> court by effect of the CDC's related case rule.  Plaintiff Henson's

25  claims will likely come before the same court as Plaintiff Turner's if her claims are transferred to

26  the CDC.  Judicial economy is better served by having a single judge hear Plaintiffs' claims.  The

27  case must be transferred to the CDC because Plaintiff Turner's claim cannot be heard by this

28  Court.

Finally, the briefs imply that Plaintiffs and their counsel would prefer Plaintiff Henson's claims be transferred to the CDC to permit consolidation with Plaintiff Turner's claims.  Plaintiffs appear to have intended their claims to be complimentary and inseparable, if possible.  The complaint states the following:

> The two named plaintiffs, Melissa Henson and Keith Turner, were selected as class representatives because, in combination, their escrow transactions contain charges from all three overnight delivery companies with whom [Defendant] had agreements to receive kickback, referral fees, or split of compensation.  This was designed to obviate any argument by [Defendant] that the class is limited to just a subset of the overnight delivery companies with whom [Defendant] had such agreements.

Pl. Opp. to MTCV, at p. 1.  Plaintiffs nowhere request the claims to be split and tried in different districts as an alternative to dismissal.  It would appear that it is in Plaintiffs' interest to maintain a single action that involves both named Plaintiffs.

Transferring the entire case to the CDC would promote judicial economy and the interest of justice.  This factor therefore weighs in favor of transfer.

### 5.  The Plaintiff's Choice of Forum

The only factor that favors maintaining venue in the EDC is Plaintiffs' choice of forum.  A plaintiff's choice of forum is normally "afforded substantial weight." Williams v. Bowman, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001).  However, the plaintiff's choice of forum loses some significance in a class action context. See Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987).  Considerably less weight is given to the plaintiff's choice of forum "where the forum lacks any significant contacts with the activity alleged in the complaint." Gill v. Simpson, 2012 WL 4863808, at *4 (E.D. Cal. 2012).  Additionally, "[i]f there is any indication that plaintiff's choice of forum is the result of forum shopping, plaintiff's choice will be accorded little deference." Williams, 157 F. Supp. 2d at 1106.

Plaintiffs' choice of forum has little weight in this case.  First, this is a class action lawsuit, purporting to encompass a class that is nationwide.  Second, as discussed extensively above, there are few, if any, significant contacts with the EDC, apart from Plaintiff Henson's home being

located in Bakersfield.  Lastly, it is possible that forum shopping was a factor in selecting the EDC as venue for this case.  As discussed above, a similar, if not identical, lawsuit was previously brought in the CDC by the same counsel representing Plaintiffs here.  The ruling in the CDC was adverse, though it does not appear to have reached the merits of the RESPA claims.  However, the selected venue for the lawsuit—the EDC, Fresno Division—could be seen as an out-of-the-way effort to avoid the CDC.  Plaintiff Turner and Plaintiffs' counsel are all located in the CDC.  Even Plaintiff Henson would have to travel to Fresno to litigate the case in the selected venue.  Further, Plaintiffs have opposed transferring the case to the CDC even as an alternative to dismissal.  There is evidence of forum shopping in the EDC.

While this factor still weighs in favor of maintaining Plaintiff Henson's claims in the EDC, her choice of forum is given substantially less weight due to the nationwide class action character of this  lawsuit, the lack of significant contacts with the EDC, and the possibility that the selection of the EDC was a result of forum shopping.


**6.  Conclusion**

The Court finds that the <u>Jones</u> factors weigh in favor of transfer.  Transferring Plaintiff Henson's RESPA claims to the CDC is in the interest of justice.  Defendant's motion to transfer venue to the CDC pursuant to 28 U.S.C. Section 1404(a) is GRANTED as to Plaintiff Henson's claims.

Plaintiff Henson's RESPA claims will therefore be TRANSFERRED to the CDC.


**V.     CONCLUSION**

For the reasons set forth above, Defendant's motion to transfer venue to the CDC is GRANTED and the case is hereby TRANSFERRED.  Defendant's motion to dismiss is hereby DENIED without prejudice.


IT IS SO ORDERED.

Dated:   February 18, 2014                      _____

                                         SENIOR  DISTRICT  JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28