O

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 ℭ𝔬𝔲𝔯𝔱
# ℭ𝔢𝔫𝔱𝔯𝔞𝔩 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 ℭ𝔞𝔩𝔦𝔣𝔬𝔯𝔫𝔦𝔞

| | |
|---|---|
| MELISSA HENSON and KEITH TURNER on behalf of themselves and others similarly situated,<br><br>    Plaintiffs,<br><br> v.<br><br>FIDELITY NATIONAL FINANCIAL INC.,<br><br>    Defendant. | Case No. 2:14-cv-01240-ODW(RZx)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS [29]** |

## I.   INTRODUCTION

This Court has previously been called upon to solemnly interpret considerable issues of federal law with far-reaching implications. This is not one of those cases. Instead, the Court must confront a surprisingly unsettled issue in the often-perplexing Real Estate Settlement Procedures Act ("RESPA"): what Congress meant when it precluded liability "for services actually performed," including what the word "services" means. *See* 12 U.S.C. § 2607(c)(2).

Plaintiffs Melissa Henson and Keith Turner contend that Defendant Fidelity National Financial Inc. violated RESPA when it received "marketing" fees from UPS, Federal Express, and OnTrac in exchange for referring overnight delivery business to the carriers via Fidelity's escrow subsidiaries. Fidelity moved to dismiss Plaintiffs

Melissa Henson and Keith Turner's putative class-action Complaint, and the Court granted in part that Motion—thus eliminating Henson from the action as well as Turner's claim under 12 U.S.C. § 2607(b).

After answering, Fidelity moved for judgment on the pleadings, arguing that the Court's previous findings regarding Fidelity's provision of actual services in exchange for its marketing fees apply equally to Turner's sole remaining claim under § 2607(a). But the Court finds that a genuine dispute of fact presented on the face of the pleadings precludes judgment in Fidelity's favor and thus **DENIES** the Motion for Judgment on the Pleadings.[1]  (ECF No. 29.)

## II.   FACTUAL BACKGROUND

The Court and parties are readily familiar with this case's facts, as the Court just recently granted in part Fidelity's Motion to Dismiss.  (ECF No. 26.)  The Court therefore includes only a brief factual background here and incorporates the summary set forth in its previous Order.

Fidelity is the controlling parent of various escrow subsidiaries.  (Compl. ¶ 13.) These escrow subsidiaries use UPS, FedEx, and OnTrac (the "Delivery Companies") to handle overnight deliveries in connection with processing and closing federally related mortgage loans.  (*Id.*)  The subsidiaries charge escrow customers for these delivery services during closing of real-estate transactions.  (*Id.*)

Turner alleges that Fidelity had separate, written "master" agreements with each of the Delivery Companies by which Fidelity—through a subsidiary called EC Purchasing—accepted kickbacks in exchange for referring delivery services to the companies.  (*Id.* ¶ 14; Mizes Decl. ¶ 11.)  Fidelity characterizes these payments as "marketing" fees from the Delivery Companies, which it receives in relation to the volume of business that Fidelity and its escrow subsidiaries transact with the carriers. (Compl. ¶ 15; Mizes Decl. ¶ 12.)  Fidelity's compliance department has repeatedly

---

[1] After carefully considering the papers filed with respect to this Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

instructed its escrow subsidiaries to use the Delivery Companies for overnight delivery services.  (Compl. ¶ 17.)  But Turner contends that Fidelity exercises such control over the subsidiaries that they did not need "marketing" services to ensure that they complied with the master agreements.  (*Id.* ¶ 18.)

On September 11, 2012, Turner refinanced his house in Los Angeles, California, with a federally related mortgage loan.  (*Id.* ¶ 24.)  Lawyers Title, another Fidelity subsidiary, handled the escrow.  (*Id.*)  Lawyers Title's "Final Settlement Statement (HUD-1)" included a charge for overnight deliveries through FedEx and OnTrac.

On September 9, 2013, Henson and Turner filed this putative class action against Fidelity, alleging that Fidelity received kickbacks and fee splits in violation of RESPA.  (ECF No. 1.)  Fidelity subsequently moved to dismiss the Complaint for failure to state a claim.  The Court granted in part that Motion, eliminating Henson from the action as well as Turner's claim under 12 U.S.C. § 2607(b).

On April 11, 2014, Fidelity moved for judgment on the pleadings.  Turner timely opposed.  That Motion is now before the Court for decision.

### III.   LEGAL STANDARD

A motion for judgment on the pleadings is "functionally identical" to a Rule 12(b) motion to dismiss; the only major difference is that a Rule 12(c) motion is properly brought "after the pleadings are closed and within such time as not to delay the trial."  *Mag Instrument, Inc. v. JS Prods., Inc.*, 595 F. Supp. 2d 1102, 1106–07 (C.D. Cal. 2008) (citing *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)).  The allegations of the nonmoving party are accepted as true, denials of these allegations by the moving party are assumed to be false, and all inferences reasonably drawn from those facts must be construed in favor of the responding party. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989).  But conclusory allegations and unwarranted inferences are insufficient to defeat a motion for judgment on the pleadings.  *In re Syntex Corp. Sec. Litig.*, 95 F.3d

922, 926 (9th Cir. 1996).  A court should grant judgment on the pleadings when, even if all material facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law.  *Hal Roach Studios*, 896 F.2d at 1550.

## IV.   DISCUSSION

Fidelity moves for judgment on the pleadings, arguing that its subsidiary EC Purchasing performed "actual services" in exchange for the "marketing" fee it received from the Delivery Companies, thus precluding any RESPA liability under § 2607(c)(2).  But the Court finds that a factual dispute on the face of the pleadings regarding whether EC Purchasing performed bona fide services in exchange for this fee precludes judgment in Fidelity's favor at this stage.

## A.   Statutory interpretation

Fidelity's Motion requires the Court to break open its statutory-interpretation toolbox to construe the definition and scope of the term "for services actually performed" within § 2607(c)(2).  The Court finds that the term means "settlement services" and contains no qualitative requirement.

### 1.   *Definition of "services" in § 2607(c)(2)*

After the Court's previous Order, Turner's only remaining claim is for violation of § 2607(a).  That section provides that "[n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."  12 U.S.C. § 2607(a).  But the section goes on to exempt certain payments as permissible under RESPA.  Section 2607(c) states that "[n]othing in this section shall be construed as prohibiting . . . (2) the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or *for services actually performed* . . . ."  *Id.* (c)(2) (emphasis added).

When interpreting a statute, a court must first start with the statute's plain language.  *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004).  If the

language is unambiguous, the court may look no further; a court may consult extrinsic materials such as legislative history only if the language is unclear. *Id.*; *Heppner v. Alyeska Pipeline Serv. Co.*, 665 F.2d 868, 871 (9th Cir. 1981). A court may clarify a word's meaning by considering surrounding words and phrases under the maxim of *noscitur a sociis*. *United States v. Stevens*, 559 U.S. 460, 474 (2010). There is also a presumption that Congress used a given term to mean the same thing throughout a statute. *Barber v. Thomas*, 560 U.S. 474, 483–84 (2010).

Fidelity contends that the term "for services actually performed" means the same thing in § 2607(c)(2) as it does in § 2607(b). Fidelity points out that the Court previously found that "Fidelity did in fact provide services by promoting the Delivery Companies to its escrow subsidiaries via internal compliance memoranda." (ECF No. 26, at 15.) Defendant therefore seeks to incorporate this finding of nonliability into Turner's claim under § 2607(a).

Turner agrees that while § 2607(c)(2) does not define the term "settlement services," it is clear that is what Congress meant when it used the word "services" standing alone.

The Court concurs. Congress did not specifically use the phrase "settlement services" in § 2607(c)(2) when it stated that RESPA does not prohibit payment "for services actually performed." But it would be curious for Congress to use the word "services" in a broader sense than it used with "settlement services." Congress specifically defined "settlement services" as "any service provided in connection with a real estate settlement." 12 U.S.C. § 2602(3). Congress would have vitiated RESPA's purposes by permitting kickbacks as long as the recipient performed any service—even if the service bore no relationship to a real-estate settlement. The Court therefore interprets § 2607(c)(2) as exempting payments "for [settlement] services actually performed." *See Cohen v. J.P. Morgan Chase & Co.*, 608 F. Supp. 2d 330, 344–45 (E.D.N.Y. 2009) (interpreting the word "services" in § 2607(b) to mean "settlement services").

2.      *Scope of "settlement services"*

In his Opposition, Turner invites the Court on a tour of RESPA's legislative history in an attempt to interpret the term "services" in the phrase "settlement services."   Turner argues that the Department of Housing and Urban Development ("HUD") has interpreted services to mean services that are actual, necessary, substantial (i.e., not nominal), and distinct (not duplicative).   *See* Real Estate Settlement Procedures Act Statement of Policy 2001-1: Clarification of Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, and Guidance Concerning Unearned Fees Under Section 8(b), 66 FR 53052-01, 53059 (Oct. 18, 2001).

But Fidelity points out that "[o]f course, that laundry list of qualifiers appears nowhere in the statute."  (Reply 4.)  Fidelity also argues that since Congress used the term "services" alone in § 2607(c)(2) but used the full term "settlement services" elsewhere, Congress expressed its intent to bar RESPA liability so long as a payment recipient performs some service in exchange for the fee.  *See Russello v. United States*, 464 U.S. 16, 23 ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks omitted)).

The United States Supreme Court has determined that courts must engage in a two-pronged inquiry in deciding whether to defer to an agency's statutory interpretation.  If Congress has directly spoken on an issue in a statute, the court must give effect to Congress's language without resort to the agency's interpretation.  *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).  But if the statute is silent or ambiguous with respect to a specific issue, the court must determine whether the agency's interpretation is a permissible construction of the statute.  *Id.* at 843.  An agency's interpretation receives controlling weight unless it is arbitrary, capricious, or manifestly contrary to the statute.  *Id.* at 843–44.

1    As previously noted, Congress specifically defined the term "settlement
2  services" to mean "any service provided in connection with a real estate settlement."
3  12 U.S.C. § 2602(3).  The Regulation accords with this definition.  24 C.F.R. § 3500.2
4  ("Settlement service means any service provided in connection with a prospective or
5  actual settlement . . . .").  Both RESPA and its regulations provide nonexhaustive lists
6  of settlement services such as originating a federally related mortgage, attorney
7  services, preparation of documents, and mortgage insurance.  *Id.*; *see also* 12 U.S.C.
8  § 2602(3).  But neither limits what can constitute a settlement service so long as the
9  service performed is "provided in connection with a real estate settlement."  *Id.*

10    HUD's interpretation that a service must be "actual, necessary and distinct"
11  generally comports with the actual legal definition of "settlement services."  For
12  example, payment for services in connection with a real-estate settlement is only
13  permissible if the service is "actually performed."  *Id.*  But it is unclear what HUD
14  means by "necessary."  To the extent that HUD sought to restrict the settlement-
15  service definition beyond RESPA's plain text, the Court may not defer to that
16  interpretation.

17    Turner is not correct that HUD interpreted "services" to mean "substantial."
18  The Regulations provide that a "charge by a person for which no or *nominal* services
19  are performed or for which duplicative fees are charged is an unearned fee and
20  violates this section."  24 C.F.R. § 3500.14(c) (emphasis added).  But not nominal
21  does not necessarily mean substantial.  *Compare* Merriam-Webster's Collegiate
22  Dictionary 786 (10th ed. 1993) (defining "nominal" as "trifling, insignificant"), *with*
23  *id.* at 1170 (defining "substantial" as "considerable in quantity").  Rather, the services
24  must only be something more than trifling or insignificant, i.e., the services must be
25  genuine, real, and actually performed in connection with a real-estate settlement.  In
26  fact, as the Court previously interpreted, the "services" element is more of an on/off
27  switch: a payment recipient bears no liability as long as it actually performed some
28  bona fide services in exchange for the benefit.

The Court declines Turner's invitation to delve into RESPA's undoubtedly labyrinthine legislative history to muster up support for his notion that the services must be "substantial."   *See, e.g.*, S. Rep. No. 93-866, *reprinted in* 1974 U.S.C.C.A.N. 6546, 6551.  Given the extensive definitions and examples provided by Congress, the term "settlement services" is not ambiguous—thus precluding resort to drafting materials.

The Court also finds Fidelity's reading of "services" unpersuasive.  The Court recognizes that Congress used two different terms—"settlement services" and "services"—in various parts of RESPA.  But one must not blindly follow statutory-construction canons into the realm of absurdity.  To think that Congress sought to create a liability safe harbor so long as a recipient of some otherwise illegal benefit performed any service—even one not related to a real-estate settlement—in exchange for the fee would lead to illogical results.  For example, this would mean that EC Purchasing could have insulated itself from liability so long as it did anything for the Delivery Companies, such as picking up their board members' dry cleaning.  If that were the case, RESPA's prohibition against kickbacks would quickly erode into nothingness.

**B.    Whether Fidelity performed actual services**

Fidelity argues that the Court's previous finding that Fidelity, through EC Purchasing, had performed actual services for its marketing fee—such as promoting the Delivery Companies to Fidelity's subsidiaries—should apply equally to § 2607(c)(2)'s exemption.  This would preclude Turner's last remaining claim for violation of § 2607(a).  Fidelity cites several cases that are factually similar to this action, in which the courts found that locating, engaging, and arranging services of third parties suffices to constitute services actually performed.  *Friedman v. Mkt. St. Mortg. Corp.*, 520 F.3d 1289, 1296 (11th Cir. 2008); *Sosa v. Chase Manhattan Mortg. Corp.*, 348 F.3d 979, 983–84 (11th Cir. 2003) ("Moreover, even if Chase could not be credited with the actual delivery, Chase benefitted the borrowers by arranging for

third party contractors to perform the deliveries.  Under these circumstances, we find it impossible to say that Chase performed no services for which its retention of a portion of the fees at issue was justified."); *Morales v. Countrywide Home Loans, Inc.*, 531 F. Supp. 2d 1225, 1228 (C.D. Cal. 2008) (interpreting the phrase "other than services actually performed").

But Turner contends that Fidelity and EC Purchasing did not perform "delivery services," because insuring delivery services of third-party vendors and negotiating discount rates are not settlement services within RESPA's meaning.  Turner points out that Fidelity only argues that Turner "benefitted" from its services, but § 2607(c)(2) requires that the payment be "for" services rendered.  Additionally, Turner asserts that there is no temporal proximity between Turner's September 2012 transaction and EC Purchasing's negotiation of discounted overnight fees at some untold point in the past for EC Purchasing's 130,000 members.  Finally, Turner argues that the courts in *Friedman*, *Sosa*, and *Morales* wrongly decided those cases, so this Court should not follow their holdings.

After reviewing the parties' submissions, the Court notes that the parties have engaged in a shell game with respect to § 2607(c)(2)'s services-actually-performed inquiry.  Despite their being three different parties involved with varied benefits flowing to each, they invoke disparate relationships between any two of them whenever convenient to their RESPA arguments notwithstanding which parties are actually relevant under the particular RESPA provision.

Section 2607(a) provides that "[n]o person shall give and no person shall accept" any thing of value in exchange for referring real-estate settlement business. The plain text of the statute suggests that two parties are relevant: the person who gives the thing of value and the person who accepts it.  There is no textual requirement that a benefit somehow flow to the real-estate buyer for the recipient to legally receive a payment.  So, in this case, Fidelity/EC Purchasing and the Delivery Companies are the relevant parties—not Turner.  It is therefore also legally irrelevant

1    whether Turner received a benefit from EC Purchasing—such as the insurance for the

2    deliveries that the company allegedly provides and which the parties hotly dispute.

3        Section 2607(c)(2) exempts from RESPA liability payments "for services

4    actually performed." Either the giver or recipient of the "thing of value" can invoke

5    this complete defense since Congress did not limit it only to a particular individual in

6    a certain position vis-à-vis the real-estate settlement. Therefore, the crucial inquiry is

7    whether the alleged kickback was really given "for services actually performed."

8        The purported kickback at issue here is the "marketing" fee EC Purchasing—

9    and thus ostensibly Fidelity—received periodically from the Delivery Companies in

10   exchange for EC Purchasing/Fidelity promoting the Delivery Companies to Fidelity's

11   escrow subsidiaries. If EC Purchasing performed no actual services for this fee, that

12   would be a violation of § 2607(a).

13       Turner has presented an interesting argument. One may easily characterize EC

14   Purchasing's acts of promoting the Delivery Companies to Fidelity's escrow

15   subsidiaries as actual services—thus earning its "marketing fee" and removing itself

16   from RESPA liability. But, looking at it another way, promoting services and

17   receiving a fee is just a prohibited kickback by another name. Indeed, in any *quid pro*

18   *quo* kickback, a person necessarily gets a fee (the *quid*) for (*pro*) promoting or

19   encouraging another to use the item, service, or other thing at issue (the *quo*).

20       Essentially, whether marketing and promotion are just euphemisms for

21   prohibited referrals is a dispute of fact raised on the pleadings that necessarily

22   precludes judgment in Fidelity's favor at this point. *See Gen. Conference Corp. of*

23   *Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d

24   228, 230 (9th Cir. 1989).

25       The Court also finds *Friedman*, *Sosa*, and *Morales* readily distinguishable from

26   this case. In all of those cases, the issue was whether the defendant was liable under

27   RESPA for receiving some fee in connection with a real-estate settlement. All three

28   courts found that the defendants bore no liability, because they performed some

settlement services in exchange for the fee.  *Friedman*, 520 F.3d at 1296 (noting that Market Street Mortgage Corporation "perform[ed] the service of locating and arranging for a third party contractor to perform tax monitoring services"); *Sosa*, 348 F.3d at 983–84 ("Through its agents, therefore, Chase performed the deliveries that were the subject of the [messenger] charges."); *Morales*, 531 F. Supp. 2d at 1228 (finding that Countrywide Home Loans bore no RESPA liability in a markup situation).

But here, Fidelity did not perform the overnight delivery that is the basis for the fee appearing on Turner's settlement statement.  From what the Court can glean from the pleadings, Fidelity simply acted as a passive intermediary with respect to the delivery charge, passing the charge from the buyer on to FedEx and OnTrac.  The dispute focuses on the marketing fee Fidelity/EC Purchasing received later on in time. The Court therefore cannot simply match up something Fidelity did at closing with the overnight-delivery fee and find no liability per § 2607(c)(2)

## C.    HUD-1 settlement statement

The Court also finds Turner's argument that the EC Purchasing's services are somehow invalid because they did not appear on his HUD-1 settlement statement unavailing.  The Regulations provide that the "settlement agent shall state the actual charges paid by the borrower and seller on the HUD–1, or by the borrower on the HUD–1A.  The settlement agent must separately itemize each third party charge paid by the borrower and seller." 24 C.F.R. § 3500.8(b)(1).

Noticeably absent is any basis for somehow rendering a service uncompensable simply because they do not appear, or appear inaccurately, on the settlement statement.  HUD seems to have aimed the Regulation at providing a borrower with the most accurate information possible concerning the charges she or her lender is to pay at closing.  But it does not follow that HUD also sought to invalidate those charges that contravened its disclosure requirements; indeed, such a result would find little basis in the statute it sought to implement.  *See* 12 U.S.C. § 2603(a) (requiring a

settlement statement but not invalidating any omitted charges).   Further, Turner misreads the disclosure requirement.  They only apply to "all charges imposed upon the borrower and all charges imposed upon the seller in connection with the settlement"—a marketing fee received by EC Purchasing is not a "charge" but rather a benefit received.  There is therefore no requirement that any services performed by EC Purchasing have appeared on Turner's HUD-1 statement.

## V.   CONCLUSION

For the reasons discussed above, the Court **DENIES** Fidelity's Motion for Judgment on the Pleadings.  (ECF No. 29.)

**IT IS SO ORDERED.**

April 29, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**